AO 106 (Rev. 01/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Connecticut

**FILED**

2018 SEP 26  A 10: 57

US DISTRICT COURT
BRIDGEPORT CT

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Information associated with cellular device assigned MSISDN (860) 235-8684,  IMSI 311480346373, IMEI 358508080100662 held by Verizon Wireless | ) |

Case No.

3:18 mJ 1489 (HBF)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ District of _____ New Jersey _____ *(identify the person or describe property to be searched and give its location):* See Attachment A.  This court has authority to issue this warrant under 18 U.S.C. §§ 2703 (c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of _____ 21 _____ U.S.C. § _____ 841(a)(1) _____ , and the application is based on these facts:  See attached affidavit of Special Agent Victoria D. Edwards of the Drug Enforcement Administration

☑ Continued on the attached sheet.

☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

DEA SA Victoria D. Edwards
*Printed name and title*

Sworn to before me and signed in my presence.

/s/ Holly B. Fitzsimmons
*Judge's signature*

Date: _____ 09/26/2018 _____

City and state:  Bridgeport, CT

The Honorable Holly B. Fitzsimmons, U.S.M.J.
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular devices assigned MSISDN (860) 235-8684, IMSI 311480346373, and IMEI 358508080100662 (referred to herein and in Attachment B as "SUBJECT PHONE 1"), with listed subscriber(s) not known that is in the custody or control of Verizon Wireless, a wireless communications service provider that is headquartered at 180 Washington Valley Road in Bedminster, New Jersey 07921. Records for SUBJECT PHONE 1 are held by Verizon Wireless subject to an agreement with Tracfone Wireless, Inc. d/b/a Simple Mobile, a wireless communications service provider that is headquartered at 9700 NW 112th Avenue in Miami, Florida

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following information about the customers or subscribers associated with SUBJECT PHONE 1 for the time period September 1, 2017 to February 12, 2018:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International

Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the SUBJECT PHONE, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT").

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iv), and 841(b)(1)(C) (Possession with intent to distribute and distribution of fentanyl and its analogues) by Barry Duclos during the period September 1, 2017 to February 12, 2018.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2018 SEP 26  A 10: 57

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
CELLULAR DEVICE ASSIGNED MSISDN
(860) 235-8684,  IMSI 311480346373, IMEI
358508080100662 (REFERRED TO HEREIN
AS "SUBJECT PHONE 1")

Case No. _____

US DISTRICT COURT
BRIDGEPORT CT

3:18 mJ 1489( HBF)

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Victoria D. Edwards, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with a certain cellular device assigned MSISDN (860) 235-8684, IMSI

311480346373, and IMEI 358508080100662 (referred to herein as "SUBJECT PHONE 1") with

listed subscriber(s) not known that is in the custody or control of Verizon Wireless, a wireless

communications service provider that is headquartered at 180 Washington Valley Road,

Bedminster, New Jersey.  Records for SUBJECT PHONE 1 are held by Verizon Wireless subject

to an agreement with Tracfone Wireless, Inc. d/b/a Simple Mobile (hereinafter "Tracphone"), a

wireless communications service provider that is headquartered at 9700 NW 112th Avenue,

Miami, Florida.  Verizon Wireless and Tracfone are referred to herein as "the Service Providers"

or "the Providers".  As providers of wireless communications service, the Service Providers are

providers of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2.      The information to be searched is described in the following paragraphs and in

Attachment A.  This affidavit is made in support of an application for a search warrant under 18

U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require the Service

Providers to disclose to the government the information further described in Section I of

Attachment B.  Upon receipt of the information described in Section I of Attachment B,

government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.      I am a Special Agent for the Drug Enforcement Administration ("DEA"), and have been since 2010.  I am currently assigned as a Special Agent for the DEA's New Haven District Office-Tactical Diversion Squad, which is comprised of personnel from the DEA, the Wilton Police Department, the Monroe Police Department, the Wallingford Police Department, the Bristol Police Department, the New Haven Police Department and the Shelton Police Department.   In this position, my duties include investigating violations of the Connecticut General Statutes and the Controlled Substances Act, including but not limited to, the diversion of controlled substances from legitimate medical channels.

4.      During my tenure as a Special Agent, I have participated in numerous criminal investigations, including investigations into suspected narcotics trafficking.  I have conducted numerous investigations of violations of the law. I have participated in the execution of state and federal arrest and search warrants.  I also have received training at the DEA Training Academy in Quantico, Virginia.  I have written and executed search warrants, which have resulted in the seizure of illegal drugs and evidence of drug violations. Over the past eight years in law enforcement, I have participated in numerous investigations involving individuals suspected of distributing illegal drugs; coordinated controlled purchases of illegal drugs utilizing confidential informants, cooperating witnesses, and undercover police officers; written, obtained, and coordinated the execution of search and arrest warrants pertaining to individuals involved in the distribution of illegal drugs; conducted electronic as well as physical surveillance of individuals involved in illegal drug distribution; analyzed records documenting the purchase and sale of illegal drugs; and spoken with informants and subjects, as well as other local, state, and Federal

law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs.  In addition, I also receive periodic in-service training relative to conducting drug investigations.  As a result of my training and experience, I am familiar with the behaviors, methods, and common practices of persons and organizations that illegally traffic and distribute controlled substances, as well as the devices commonly utilized by them.

5.     The facts in this affidavit come from my personal observations, my training and experience, and my review of documents as well as from information obtained through other agents and witnesses and the training and experience of other law enforcement officers related to me in the course of this investigation. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iv), and 841(b)(1)(C) (Possession with intent to distribute and distribution of fentanyl and its analogues) have been committed by Barry Duclos.  There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

7.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

*A.      The Instant Investigation: 1NOLEFB1 and Fentanyl Distribution*

8.      On or about September 7, 2017, postal inspectors received information from a cooperating defendant (hereinafter "CD1") in a separate federal case, whose information has proven to be accurate and reliable, that there was an individual known as "1NOLEFB1" selling Fentanyl on the Dark Net Market ("DNM")[1] called Dream Market.  According to CD1, the Fentanyl was being shipped through the U.S. Mail, and the return address on the package was in New London, Connecticut.

9.      USPIS personnel were able to locate a profile on Dream Market for 1NOLEFB1, and accessed the associated vendor page on or about September 4, 2017, at which time the page displayed a "last active" date of September 4, 2017, with the annotation "today".  The 1NOLEFB1 vendor page showed the user name and a "Join Date" of September 30, 2016.  The profile also indicated the user's number of sales and their customer rating.  The 1NOLEFB1 account showed "90" total sales and a customer rating of "4.91" as of September 4, 2017.

10.      According to the 1NOLEFB1 Dream Market vendor page as of September 4, 2017, 1NOLEFB1 listed an alternate contact email address of 1NOLEFB1@protonmail.com, and advised customers to be sure "addresses are in proper format AND to REAL person AT that address!!!"  1NOLEFB1 also advised customers that "Product IS legal, BUT if they can prove

---

[1] The "Dark Network" or "Dark Web" refers to any portion of the Internet that can be accessed only with specific software, configurations or authorization.  The most commonly known Dark Network is The Onion Router, otherwise known as TOR.  People who access the Dark Network use a series of sites that anonymize their internet traffic, thereby making it difficult for law enforcement to track them via an Internal Protocol addresses. To further criminal activities, those distributing illicit goods, including narcotics, have established websites on the Dark Network, known as DNMs, on which they advertise and sell the illicit materials.

intent(like we know they will after searching phone, computer and house) they will still charge you!  WE DON'T WANT THAT!!!! BE SMART!!!!"

11.     The 1NOLEFB1 user's vendor page listed the user's PGP Public Key Block, consisting of 1,536 characters. I know from my training and experience and from information provided to me by reliable law enforcement sources that a PGP Public Key Block such as the one shown on 1NOLEFB1's vendor page is unique, and the chances of identical PGP Public Key Blocks being used by unrelated users is unlikely.

12.     1NOLEFB1 advertised the following products for sale on September 4, 2017:

    a.     "200mg R30490-Carfent analog-Express OK*50mgfree" listed for a sale price of .0232 Bitcoin;

    b.     "FE 4*10% 200mg R30490-Carfent analog—Domestic!-Expr" listed for a sale price of .0232 Bitcoin;

    c.     "10%free FE*200mg R30490-Carfent analog—Domestic!-E" listed for a sale price of .0232 Bitcoin;

    d.     And two separate listings for "FUEF FENTANYL 200mg*Domestic*10% 4-fe" listed for a sale price of .0151 Bitcoin.

13.     I know based on my training and experience that "Carfent" is an abbreviation for Carfentanyl, a federally scheduled controlled substance which is chemically similar to Fentanyl, and "FUEF Fentanyl" is an abbreviation for Furanyl Fentanyl, a federally scheduled controlled substance which is chemically similar to Fentanyl. Based on these advertisements and my training and experience, I believe that 1NOLEFB1 was advertising that he would sell 200 milligram quantities of Carfentanyl and Furanyl Fentanyl for various amounts of bitcoin.  Based on my training and experience, I also know that vendors within the United States often advertise

that fact by stating that they are "Domestic" or based in the "USA" because it makes customers more comfortable to know that their parcels are not subject to cross border searches. I also know that vendors and customers often refer to USPS Priority Mail Express service by using the term "Express", and that vendors often incentivize customers to finalize their payments early with free product. This process is often called "Finalize Early" or "FE" for short. In this case, I believe that 1NOLEFB1 was advertising that he was domestically based ("Domestic!"), used USPS Express mail ("E", "Expr", and "Express") and offered ten percent free product if customers finalized their payments early ("10% 4-fe").

14.    On October 5, 2017, USPIS personnel again accessed Dream Market and observed the vendor page of 1NOLEFB1. On this date, the "Last Active" date was listed as October 5, 2017 with the annotation "today". The total sales for 1NOLEFB1 as of October 5, 2017 were "310" and the average customer rating was "4.9".

15.    According to 1NOLEFB1's page on October 5, 2017, 1NOLEFB1 was advertising "MAF,FUEF,AND NO MORE*** CARFENTANYL*** GOT MORE COMING BUT AGAIN IT WILL BE LIMITED SO FIRST COME FIRST SERVE." 1NOLEFB1 also advised customers that, "We always ship when we say! We have no control over USPS.....it would never be us that caused your pack to get snagged<rather your stupidity and shipping express after express to same spot!!!!". Based on my training and experience and conversations with other reliable law enforcement officers, I know that MAF is an acronym for Methoxyacetylfentanyl, a federally scheduled controlled substance. Hence, I believe that 1NOLEFB1 was advertising the sale of this controlled substance along with Carfentanyl. Based on my training and experience, I further believe that 1NOLEFB1 was advising that his customers should not select the same address for multiple drug shipments as the Postal Service might detect

such a pattern and intercept the package ("We have no control over USPS.....it would never be us that caused your pack to get snagged<rather your stupidity and shipping express after express to same spot").

16.     1NOLEFB1 also advised that "If you find materials that aren't completely H20 soluble, that's NOT adulterants! That means you need to research the proper solvent for the material your project is using..I.E. BA or PG or METHANOL.TYPICALLY IT'S ONE OF THOSE!!! As these aren't for human consumption please DO NOT ask me about uses for the product. If you've made it this far you can find the info you need without implicating me in your crime. Thanks." I know based on my training and experience, and from conversations with other law enforcement officers, that raw Fentanyl is often mixed with a solvent in order for it to be combined with other controlled substances or consumed. Depending on the type of Fentanyl or Fentanyl analogue, the type of solvent used may differ. From the statements referenced above, I believe 1NOLEFB1 was directing customers on how to properly use Fentanyl and Fentanyl analogues.

17.     On December 1, 2017, USPIS personnel again accessed Dream Market and observed the vendor page of 1NOLEFB1. According to 1NOLEFB1's page the "Last Active" date was December 1, 2017, with an annotation of "today". The total sales for 1NOLEFB1 as of December 1, 2017 were "600" and the average customer rating was "4.9".

18.     1NOLEFB1 listed the following products for sale on December 1, 2017: Four separate listings for "600MG MAF-DOMESTIC USA! EXPRESS OK!10%4FE" listed for a sale price of .0189 Bitcoin. Based on my training and experience and conversations with other law enforcement officers, I know that MAF is an acronym for Methoxyacetylfentanyl, a

federally scheduled controlled substance, and hence I believe that 1NOLEFB1 was advertising the sale of 600 milligrams of this controlled substance for an amount of bitcoin.

19.     On October 18, 2017, USPIS personnel, acting in an undercover capacity, conducted a controlled purchase of fentanyl from the Dream Market vendor 1NOLEFB1.  The purchased item was listed as "300 MG MAF" for a purchase price of .0163 Bitcoin.  The order, which was assigned order number 72429501, was submitted, but was rejected by the vendor. The reason provided by the vendor was "BATCH IS GONE.  WE WILL SHUT DOWN UNTIL NEW ORDER ARRIVES."

20.     On October 18, 2017, after learning that the previous order had been rejected, USPIS personnel acting in an undercover capacity placed a second order with 1NOLEFB1.  This second order was for "300MG MAF-DOMESTIC USA! EXPRESS OK!10%4FE" for a total price of .01939 Bitcoin including shipping.  This order was assigned order number 6472373. This order remained in pending status until October 24, 2017, when the vendor marked the package as sent.

21.     On October 26, 2017, a USPS Priority Mail Flat Rate Envelope arrived at an address controlled by USPIS.  The parcel bore the return address "Real Estate Guys, LLC, 445 Bank Street, New London, CT 06320" and the tracking number 9205 5901 7554 7700 0032 4936 94.  This parcel is hereinafter referred to as UC parcel 1.

22.     Postal Inspector Jeremy Tendler of the United States Postal Inspection Service opened UC parcel 1.  Within UC Parcel 1, Postal Inspector Jeremy Tendler found a manila envelope with the number "4" written in small hand-printing on the edge of the envelope. Inside the manila envelope, Postal Inspector Jeremy Tendler located a small, white envelope. Inside the small white envelope was a greeting card. Taped to the inside of the greeting card was a small

plastic zip-top baggie. The small plastic zip-top baggie contained a smaller plastic zip-top baggie. The smaller baggie was labeled "4", "Not 4 Humans", and ".340 FE" hand-written on the baggie in black marker. The baggie contained an unknown white powdery substance, which was tested by the U.S. Postal Inspection Service Forensic Laboratory (USPIS Lab) and determined to contain cyclopropyl fentanyl, a Schedule II federally controlled substance.

23.     On November 14, 2017, USPIS personnel, acting in an undercover capacity, conducted a controlled purchase of fentanyl from the Dream Market vendor 1NOLEFB1.   The purchased item was listed as "600MG MAF-DOMESTIC USA! EXPRESS OK!!10%4FE" for .0303 Bitcoin.   The order was submitted for a total purchase price of .0371 Bitcoin including shipping.

24.     On November 17, 2017, the vendor updated the order status to "sent".   On or about November 25, 2017, a USPS Priority Mail Flat Rate Envelope bearing tracking number 9270 1901 7554 7700 0000 1703 63 arrived at an address controlled by USPIS.   The return address on the parcel was "Harowitz and Sons, LLC, 498 Eaton Street, Providence, RI 02908." This parcel is hereinafter referred to as UC Parcel 2.

25.     Postal Inspector Jeremy Tendler opened UC Parcel 2.   Within UC Parcel 2, Postal Inspector Jeremy Tendler found a manila envelope with the number "1" written in small hand-printing on the edge of the envelope. Inside the manila envelope, Postal Inspector Jeremy Tendler located a small, white envelope. Inside the small white envelope was a greeting card. Taped to the inside of the greeting card was a small plastic zip-top baggie. The small plastic zip-top baggie contained a smaller plastic zip-top baggie. The smaller baggie was labeled "1", "Not for Humans", and ".6631" hand-written on the baggie in black marker. The baggie contained an unknown white powdery substance, which the U.S. Postal Inspection Service Forensic

Laboratory (USPIS Lab) tested and which was found to contain cyclopropyl fentanyl, a Schedule II federally controlled substance.

**B.      1NOLEFB1 is Barry Duclos**

26.      Based on the evidence amassed to date as detailed below, there is probable cause to believe and I do believe that 1NOLEFB1 is actually Barry Duclos.

27.      USPIS personnel were able to locate an on-line account with the U.S. Postal Service using the username 1NOLEFB1.  This account allows the user to track packages and purchase postage.  According to U.S. Postal Service records, the subscriber for this account is Barry Duclos with the mailing address of 91 Lafayette Street in Norwich, Connecticut, an email address BDone@rocketmail.com, and the telephone number (860) 373-7702.

28.      USPIS personnel were able to identify two other locations where the username 1NOLEFB1 was used and appear to be associated with Duclos.  The Massachusetts Institute of Technology (MIT) houses a "Public Key Server" that is used to maintain the Public portion of PGP keys and associates those keys with an email address and often a "nickname" for the key. The MIT PGP Public Key Server associated the PGP Public Key found on the Dream Market vendor page of 1NOLEFB1 with the email address "1NOLEFB1@protonmail.com".   The "nickname" for this Public Key is "BD's Key".  I believe that "BD" is a reference to the initials of Barry Duclos.

29.      Open source information also identified an account on iOffer.com using the moniker 1NOLEFB1.  On the user profile for this user, the user claims to be located in Norwich, Connecticut.  Prior to his arrest, Duclos lived in Norwich, Connecticut.

30.      On November 28, 2017, U.S. Customs and Border Protection (CBP) at the John F. Kennedy International Airport, Trade Operations Division, International Mail Branch identified a

suspicious package addressed to Barry Duclos at 91 Lafayette Street in Norwich, Connecticut. This parcel bore tracking number EA 276 847 508 HK.   The CBP officers conducted a border search of the package and recovered approximately 14 grams of a white, powdery substance that tested positive as Fentanyl.

31.     According to Postal Business Records, Barry Duclos has received multiple parcels from China to his addresses at 91 Lafayette Street and 16 Yantic Street in Norwich, Connecticut.   A number of these parcels bear return addresses that have a history of shipping controlled substances to the United States, based on information provided by other federal law enforcement agencies.   Of particular note is that on September 4, 2017, 1NOLEFB1's vendor page states "WE ARE OUT OF STOCK IN RECORD TIME", "IT's ON IT's WAY THO", and "WE'LL BE BACK ASAP".   On the same day, according to records provided by other federal law enforcement agencies, a parcel from China was destined for Barry Duclos at 91 Lafayette Street in Norwich.   Previous parcels from this sender have been intercepted and found to contain Fentanyl.

## C.     *The Search of 16 Yantic Street*

32.     On February 12, 2018, law enforcement officers executed a federal search warrant authorized by the Honorable Donna Martinez, U.S.M.J., at Duclos' residence located at 16 Yantic Street in Norwich, Connecticut.

33.     While executing the warrant, investigators found evidence of Duclos' involvement in the darkweb distribution of controlled substances through the U.S. Mail including, but not limited to, the following: multiple bags of controlled substances, scales, syringes, baggies, small cups that appeared to have drug residue, bundles of unused USPS Priority Mail envelopes, a package of manila shipping envelopes, an Apple MacBook Air laptop

computer, a Hewlett Packard Elitebook laptop computer, a Samsung Galaxy Note 8 smartphone (SUBJECT PHONE 1), and an Apple iPhone 6s.

34.     As a result of the evidence located within his home and the information provided above, federal law enforcement officers arrested Duclos pursuant to a federal criminal complaint and charged him with, inter alia, possession with intent to distribute controlled substances, in violation of 21 U.S.C. Section 841(a)(1).[2]

**D.     *Duclos' Post Arrest Statements***

35.     On February 12, 2018 Duclos consented to a field interview regarding his activities.  Duclos was provided with verbal and written Miranda warnings, and Duclos signed a Miranda Waiver.  During the post arrest interview of Duclos on February 12, 2018, he made the following pertinent statements, in substance and in part:

       a.   Duclos stated that he had done a lot of reading and research online before he decided to start buying and selling fentanyl.

       b.   Duclos stated that he had purchased a Virtual Private Network (VPN) subscription to access the internet more anonymously, but had not used the service. He stated that rather than use the VPN service it was easier to just visit locations that offered free wireless internet access. Inspector Tendler asked Duclos what types of locations he used, Duclos admitted that he used McDonald's restaurants among other locations.

---

[2] A grand jury subsequently indicted Duclos, charging him with eight counts of possession with intent to distribute and distribution of fentanyl analogues, one count of possession with intent to distribute 10 or more grams of fentanyl analogue, one count of possession of firearms in furtherance of drug trafficking, and one count of unlawful possession of a firearm by a convicted felon.

   c.  Duclos did not buy the fentanyl from China on a Dark Net Market (DNM), but rather just sent emails to the individuals in China to arrange for the purchases.

   d.  When asked what email addresses he used, Duclos stated that he had several emails that he used. He had difficulty recalling each of them but said that many of them were similar to bdone@rocketmail.com. When asked about an email address at Proton Mail, Duclos stated that he had set an address up, but had never actually used it. When asked what that username was, Duclos stated it was "1NOLEFB1".

   e.  Duclos stated that he had been buying and selling fentanyl on the dark web for a long time, but was adamant that he had stopped doing that a number of months ago.  Duclos stated that he had most recently been using the DNM known as "Dream Market".  Duclos stated that he had been using the moniker "1NOLEFB1" on the Dream Market.

   f.  Duclos stated that he had used a company called Stampnik to purchase mailing labels to send out packages of fentanyl through the U.S. Mail.

**E.**   ***Duclos Use of Stampnik***

36.    During the course of the investigation records were obtained a company called Stampnik associated with the 1nolefb1@protonmail.com email address.  Stampnik is a third party postage provider that is permitted by the USPS to sell postage, much like more commonly known vendors like Pitney Bowes or Stamps.com.  One thing that sets Stampnik apart, however, is that they accept cryptocurrency – such as bitcoin – as payment for postage.  Based on my training and experience, Stampnik is often used by dark web drug traffickers to purchase postage

for the distribution of their controlled substances because of the additional layer of anonymity that cryptocurrency provides.

37.     A review of those records revealed that a user with the email address 1nolefb1@protonmail.com had purchased postage and shipping labels for more than 430 USPS parcels between September 14, 2017 and December 4, 2017.  These purchases took place with the user visiting the site on almost a daily basis to purchase labels.  These labels match USPS business records that reflect the mailing of these parcels to the addresses provided by Stampnik. For each Stampnik mailing, USPS records reflect that these parcels entered the mail stream and the specific time and location where the actual mail pieces entered the mail stream[3].

### F.     *Duclos Use of SUBJECT PHONE 1*

38.     I have communicated with those law enforcement officers who have reviewed a forensic copy of the content of SUBJECT PHONE 1, which was obtained and searched pursuant to a federal search warrant, including call logs, photographs, and text messages.  Based on that review SUBJECT PHONE 1, I represent that the phone appears to have been used on a daily basis during the period from September 14, 2017 through December 4, 2017.

39.     This includes, by way of example, October 12, 2017, when 21 parcels purchased from Stampnik by a user with the email address 1nolefb1@protonmail.com and with the return address of "Real Estate Guys LLC, 235 Promenade Street, Providence, RI 02908" were accepted into the mail stream in three different towns in Rhode Island.  With respect to Duclos' use of SUBJECT PHONE 1 on October 12, 2017, there is a Short Message Service (SMS) text message conversation between Duclos and his minor daughter which includes the following:

---

[3] For the purposes of this affidavit, a parcel is considered as having been accepted into the mail stream when it has been scanned by a USPS Employee as "Accepted".  Parcels may be scanned as "Accepted" when they are handed to a USPS Employee at a point of sale, on a route, or when the item is retrieved from a USPS collection box.

a. At approximately 7:42:33am, Duclos' daughter sent the following message, "Hey dad. Ms Chrissy's phone number is ***-***-5074 just in case you need it. Love you. See you later!! I have to be at the field at 330 for warm ups."

b. At approximately 12:29:33pm, Duclos responded with "Ok." Then, at approximately 12:29:52pm, "Will you be with her or at home?"

c. At approximately 2:10:25pm, Duclos' daughter sent: "With her"

d. Duclos responded at approximately 2:11:58pm with "Ok. Send me Addy and I'll be there by 310. Love you". There are some pleasantries exchanged, but the next substantive message is from Duclos at approximately 3:14:01pm, in which Duclos states "1min and I'm there babe".

40.     I believe the conversation above combined with the almost daily usage is demonstrative that Duclos kept SUBJECT PHONE 1 with him on a regular basis, and that there is probable cause to believe that he had the phone with him when he mailed the parcels referenced above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of the charged drug offenses and attribute the mailings to Duclos.

## CONCLUSION

41.     Based on the above facts, your affiant believes that Barry Duclos used the SUBJECT PHONE 1 on the same days that packages associated with his Stampnik account entered the mail stream.  Your affiant also believes that there is probable cause that Duclos has used post office boxes to distribute quantities of controlled substances purchased from darknet

marketplaces and imported into the United States contrary to U.S. law. Based on the foregoing, there is probable cause to believe that the requested data will uncover additional evidence regarding Duclos's distribution activities. Specifically, the location of SUBJECT PHONE 1 is likely to lead to the discovery of additional evidence of Duclos's drug trafficking activity and to the identification of, among other things, the locations where he mailed packages containing narcotics, other locations where he may have conducted his narcotics trafficking activities, and additional locations where he may have stashed narcotics and/or narcotics proceeds.

## CELL-SITE DATA

42.     Based on my training and experience, I know that the Service Providers can collect cell-site data on a prospective basis about SUBJECT PHONE 1. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Providers typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

43.     Based on my training and experience, I know that Verizon also can collect per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.]

## AUTHORIZATION REQUEST

44.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

45.     I further request that the Court direct the Service Providers to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

46.     Because the warrant will be served on the Service Providers, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____

Victoria D. Edwards

Special Agent

Drug Enforcement Administration

Subscribed and sworn to before me on 26 September , 2018

/s/ Holly B. Fitzsimmons

HON. HOLLY B. FITZSIMMONS

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

**Property to Be Searched**

1. Records and information associated with the cellular devices assigned MSISDN (860) 235-8684, IMSI 311480346373, and IMEI 358508080100662 (referred to herein and in Attachment B as "SUBJECT PHONE 1"), with listed subscriber(s) not known that is in the custody or control of Verizon Wireless, a wireless communications service provider that is headquartered at 180 Washington Valley Road in Bedminster, New Jersey 07921. Records for SUBJECT PHONE 1 are held by Verizon Wireless subject to an agreement with Tracfone Wireless, Inc. d/b/a Simple Mobile, a wireless communications service provider that is headquartered at 9700 NW 112th Avenue in Miami, Florida

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following information about the customers or subscribers associated with SUBJECT PHONE 1 for the time period September 1, 2017 to February 12, 2018:

    i. Names (including subscriber names, user names, and screen names);

    ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long distance telephone connection records;

    iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v. Length of service (including start date) and types of service utilized;

    vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International

Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the SUBJECT PHONE, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT").

## II.  Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iv), and 841(b)(1)(C) (Possession with intent to distribute and distribution of fentanyl and its analogues) by Barry Duclos during the period September 1, 2017 to February 12, 2018.

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Verizon Wireless, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Verizon Wireless. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.   all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Verizon Wireless, and they were made by Verizon Wireless as a regular practice; and

b.   such records were generated by Verizon Wireless's electronic process or system that produces an accurate result, to wit:

1.   the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Verizon Wireless in a manner to ensure that they are true duplicates of the original records; and

2.   the process or system is regularly verified by Verizon Wireless, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                             Signature